IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID K. BROADBENT as RECEIVER for MERRILL SCOTT & ASSOCIATES, LTD., et al., <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> CGI INTERNATIONAL HOLDINGS, INC., et al., <br><br> Defendants. | ORDER & MEMORANDUM DECISION <br><br><br><br><br> Case No. 2:02-CV-230 TC |

Plaintiff David K. Broadbent ("Receiver") brought this suit in his capacity as court-appointed Receiver for Merrill Scott & Associates, Ltd.; Merrill Scott & Associates, Inc.; Phoenix Overseas Advisors, Ltd.; Gibralter Permanente Assurance, Ltd.; and their subsidiaries and affiliated entities (collectively "MSA").  Mr. Broadbent was appointed Receiver pursuant to an order issued by this court in the related case of Securities & Exchange Commission v. Merrill Scott & Associated, Ltd., et al., Case No. 2:02CV39.  (See Jan. 23, 2002 Order in Case No. 2:02 CV39, Dkt. No. 15).   On August 20, 2004, the court granted summary judgment in favor of the Receiver finding Defendants Robert J. Hipple and Rodney B. Read liable for the fraudulent conveyance of MSA assets under the Utah Fraudulent Transfer Act and for a breach of their fiduciary duties to MSA.  The court also found CGI International Holdings, Inc. ("CGI"), liable for fraudulent conveyance as a subsequent transferee.

This matter is before the court on the issue of whether Mr. Hipple and Mr. Read may be

held personally liable and on the amount of damages owed by CGI, Mr. Hipple, and Mr. Read. The court held a hearing on these issues on December 16, 2004.  At the conclusion of that hearing, the court requested supplemental briefing.

For the reasons set forth below, the court finds that Defendants Hipple and Read are jointly and severally liable in the amount of $3,502,337.00, the total loss suffered by MSA as a result of their actions, and that CGI, as subsequent transferee, is liable for $522,962.27 of that total amount.

## BACKGROUND

On January 22, 2004, the Receiver filed a motion for summary judgment on the following claims: (1) fraudulent conveyance under the Utah Fraudulent Transfer Act against Mr. Hipple, Mr. Read and CGI; (2) breach of fiduciary duty against Mr. Hipple and Mr. Read, former directors of Merrill Scott & Associates, Inc.; and (3) conversion against Mr. Hipple, Mr. Read and CGI.  In its August 20, 2004 Order, the court granted summary judgment against Mr. Hipple and Mr. Read on the breach of fiduciary duty and fraudulent transfer claims and against CGI on the fraudulent transfer claim.  The court did not reach the issue of conversion.

In granting summary judgment in favor of the Receiver, the court found that Mr. Hipple, Mr. Read, and CGI, are liable to Merrill Scott, and thus the Receiver, for the fraudulent conveyance of Merrill Scott assets and also that Mr. Hipple and Mr. Read are jointly and severally liable for breach of their fiduciary duties to Merrill Scott.  The court also wrote that: "Further proceedings are required to determine the amount of damages owed to Merrill Scott." (August 20, 2004 Order, Dkt. No. 164 ("August 20, 2004 Order") at 23).

The court now examines whether, and to what extent, Mr. Hipple, Mr. Read are personally liable to MSA through the Receiver as a result of their actions.  The court also

determines the amount of damages owed by CGI as transferee of the fraudulent conveyance.  The facts of this case were explored in the court's August 20, 2004 Order and the court revisits them only as necessary.

## ANALYSIS

Mr. Hipple & Mr. Read

Officers and directors can be held personally liable when they breach their fiduciary duties with "gross negligence, willful misconduct, or intentional infliction of harm on the corporation or the shareholders."  U.C.A. § 16-10a-840(4); Armed Forces Ins. Exch. v. Harrison, 70 P.3d 35, 41 (Utah 2003).  The court's August 20, 2004 Order granting Plaintiff's motion for summary judgment specifically found that in executingthe Acquisition Agreement ("Agreement") between MSA and International Planning Associates ("IPA"): "Mr. Hipple and Mr. Read breached their fiduciary duties to Merrill Scott by executing a fraudulent transfer of substantially all Merrill Scott's assets to [International Planning Associates] for less than reasonably equivalent value.  In this case, given the undisputed facts, such breach rose to the level of gross negligence."  (August 20, 2004 Order at 22) (emphasis added).  The Agreement transferred virtually all of MSA's assets to IPA.  Under the plain language of U.C.A. § 16-10a-840(4) Mr. Hipple and Mr. Read can be held personally liable for the losses suffered by MSA.

Mr. Hipple and Mr. Read have argued that they cannot be held liable for losses which occurred after they resigned their positions at MSA.  Specifically, they argue that their fiduciary duty ended immediately after the execution of the Agreement between MSA and IPA and therefore cannot be held personally liable for any subsequent occurrences.

Mr. Hipple and Mr. Read correctly state the general rule that once an individual resigns as an officer or director, the previously existing fiduciary duty ends.  Microbial Research Corp. v. Muna, 625 P.2d 690, 695 (Utah 1981); C & Y Corp. v. General Biometrics, Inc., 896 P.2d 47

(Utah Ct. App. 1995).  The court in its August 20, 2004 Order found, however, that: "Any argument by [Mr. Hipple and Mr. Read] that their fiduciary duties had expired by the time the Agreement was executed is incorrect."  (August 20, 2004 Order at 19).

As explained in great detail in the court's August 20, 2004 Order, the injury suffered by MSA subsequent to the resignation of Mr. Hipple and Mr. Read was the direct result of the execution of the Agreement which "ha[d] its inception while the fiduciary relationship [was] in existence." (Id. (quoting C & Y Corp. v. General Biometrics, Inc., 896 P.2d at 54)).  The Agreement serves as the factual basis for liability both for breach of fiduciary duty and for liability under the Utah Fraudulent Transfer Act.  Despite the protests of Mr. Hipple and Mr. Read that their fiduciary duty had expired relieving them of personal liability, the court has already found to the contrary and need not revisit that issue here.[1]

Because Mr. Hipple and Mr. Read have been found liable for a breach of fiduciary duty based upon the execution of the Agreement, they are liable for an amount equal to the funds diverted from MSA as a result of the Agreement.  Without recounting all of the facts surrounding this case, the Agreement required IPA to assume debts of MSA in the amount of $106,769.12 and was supposed to transfer 15,000 shares of IPA Common Capital Stock to MSA.  In return, IPA was to receive: (1) computer hardware, furniture, and telephone assets; and (2) all future income, work in process, material agreements, employment agreements and confidentiality and non-disclosure agreements, and strategic plans and relationships relating to the business of MSA.

Pursuant to the court's request for further briefing and documentation regarding a damages award, the Receiver filed the Amended Expert Report of Gil A. Miller Relating to an

---

[1] Mr. Hipple and Mr. Read also argue that they cannot be held liable under the Utah Fraudulent Transfer Act.  The court's determination that Mr. Hipple and Mr. Read breached their fiduciary duty to MSA serves as a basis for their personal liability for the total injury suffered by MSA. The court need not reach the separate question of whether they may be held personally liable under the Utah Fraudulent Transfer Act.

Accounting Examination of CGI International Holdings, Inc. and Its Subsidiaries.  Mr. Miller, in

CGI's offices, examined files, books, accounts, documents, correspondence, memoranda, notes,

computer files and databases, bank statements, financial institution records, ledgers, wiring

records, and other accounting records.  (Am. Expert Report of Gil A. Miller attached as Ex. A to

Decl. of Gil. A. Miller, Dkt. No. 166 ("Miller Report") at 2).[2]  Mr. Miller and his staff

interviewed nine CGI employees, including Mr. Hipple and Mr. Read, and analyzed bank records

obtained by subpoena.  (Id.).

Mr. Miller's examination enabled him to trace funds diverted from MSA from the date of

the Agreement.  The Miller Report details the transfer of the various MSA assets pursuant to the

Agreement and identifies the value of MSA services, products, and clients, resulting from the

transfer of those assets to IPA pursuant to the Agreement.  According to the Miller Report a large

amount of the total loss suffered by MSA was from the transfer of client fees and commissions

that originated before CGI's formation.  But for Mr. Hipple and Mr. Read's breach of fiduciary

duty and the fraudulent transfer, those fees and commissions would have remained the property

of MSA.  Mr. Miller's report also demonstrates that MSA never received the 15,000 shares of

IPA stock required by the Agreement and actually assumed only $14,816.00 of MSA's debt

despite the Agreement's statement that it would assume $106,769.12.

Based upon the credible analysis of Mr. Miller, the diverted funds that resulted from Mr.

Hipple and Mr. Read's breach of fiduciary duty is no less than $3,502,337.00.

CGI

The court, in its August 20, 2004 Order, found that CGI is liable to the Receiver for the

---

[2]The document attached as exhibit A to the Declaration of Gil A. Miller is entitled the "Amended Expert Report," however, this is the only entry on the docket of an expert report and is therefore treated as the original despite its categorization as amended.

receipt of a fraudulent conveyance of MSA assets.  CGI has argued that it is not liable for monetary damages because such a remedy was not sought by the Receiver in his first amended complaint and is not available under the Utah Fraudulent Transfer Act.[3]

CGI is correct that the Receiver, in his first amended complaint, did not specifically seek monetary damages for the fraudulent conveyance under the Utah Fraudulent Transfer Act.  The court, however, is not bound by the Receiver's prayer for relief.  Fed. R. Civ. Proc. 54(c).  "'[W]here the defendant appears and the parties are at issue, the final judgment shall grant relief to which the prevailing party is entitled regardless of the relief demanded.'" Steinmetz v. Bradbury Co., Inc., 618 F.2d 21, 24 (8th Cir. 1980) (quoting Troutman v. Modlin, 353 F.2d 382, 385 (8th Cir.)); see also Neff v. Western Cooperative Hatcheries, 241 F.2d 357, 363 (10th Cir. 1957) ("it is not error to grant relief beyond that prayed in a contested action").  Additionally, it is well-within the scope of the Utah Fraudulent Transfer Act to award monetary damages.  While the majority of prescribed remedies are equitable in nature, a creditor may obtain: "any other relief the circumstances may require."  U.C.A. § 25-6-8(1)(c)(iii).[4]

Based upon the court's finding that there was a fraudulent transfer and that CGI is liable as the subsequent transferee of the fraudulently conveyed assets under U.C.A. § 25-6-9(2)(b), the court's sole purpose at this time is to determine the value of the MSA assets which were transferred to CGI.  According to the Miller Report, CGI was the subsequent transferee of fraudulently conveyed MSA assets in the amount of $572,980.00.  The Miller Report details the

---

[3]CGI also argues that no MSA assets were ever transferred or conveyed to any person, including CGI, preventing the entry of a judgment against CGI.  The court has already determined that CGI is the subsequent transferee of MSA assets and this conclusion is not now subject to reconsideration.  (August 20, 2004 Order at 16-17).

[4]Other jurisdictions which have also adopted the Uniform Fraudulent Transfer Act have also found that money damages are an acceptable remedy under this provision.  See e.g., Constitution Realty, LLC v. Oltarsh, 766 N.Y.S.2d 425, 427 (N.Y. App. Div. 2003) ("'A court of equity . . . may award a personal judgment against a party in lieu of setting aside a transfer' [and] 'may adapt its relief to the exigencies of the case[.]'" (citations omitted)).

subject transactions.[5]

CGI received funds from three MSA entities.  Anglo Projects transferred $44,082.00 of client fees and commissions it had received from the Estate Planning Institute, an MSA affiliated law firm.  Anglo Projects also made direct payments to iCapital Corp. and other CGI vendors in total amount of $134,735.00.  CGI also received commissions from sales made by MSA's insurance division in the amount of $165,000.00.  Finally, IPA transferred $229,163.00 to CGI for a total of $572,980.00.  The figures represent amounts that have been directly traced from MSA entities to CGI.  The Receiver received $50,017.73 in funds under the control of CGI in April 2002.  The total amount for which CGI is liable is no less than $522,962.27.

## ORDER

For the reasons set forth, pursuant to its August 20, 2004 Order, the court finds that:

A.      Mr. Hipple and Mr. Read are jointly and severally liable to Mr. Broadbent, as Receiver for MSA, in an amount no less than $3,502,337.00; and

B.      CGI, as the subsequent transferee of a fraudulent conveyance under the Utah Fraudulent Transfer Act, is liable to Mr. Broadbent, as Receiver for MSA, for no less than $522,962.27 of the total amount owed by Mr. Hipple and Mr. Read.


DATED this 2nd day of June, 2005.

BY THE COURT:

TENA CAMPBELL
United States District Judge

---

[5]While CGI argues that the conclusions of the Miller Report are incorrect, the majority of CGI's arguments are more properly directed toward the conclusions drawn by the court in its August 20, 2004 Order.  Such arguments are not properly before the court at this time.